UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

NICHOLAS BLACK,

    Plaintiff,

v.                                    Case No. 07-C-0964

MATTHEW J. FRANK, DAN WESTFIELD,
JEFFREY P. ENDICOTT, SCOTT ECKSTEIN,
SALLY J. WESS and RANDY TRINRUD,

    Defendants.

ORDER GRANTING PLAINTIFF'S MOTION FOR LEAVE TO PROCEED
IN FORMA PAUPERIS (DOC. # 3) AND SCREENING THE COMPLAINT
PURSUANT TO 28 U.S.C. § 1915A.

Plaintiff, Nicholas Black, a state prisoner, filed this *pro se* civil rights complaint under 42 U.S.C. 1983. Now, the matter is before the court on the plaintiff's petition to proceed *in forma pauperis*.

Inasmuch as the plaintiff has paid an initial partial filing fee of $19.56, his motion for leave to proceed *in forma pauperis* will be granted.

The court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b).

A claim is legally frivolous when it lacks an arguable basis either in law or in fact. *Denton v. Hernandez*, 504 U.S. 25, 31 (1992); *Neitzke v. Williams*, 490 U.S. 319, 325

(1989); *Hutchinson ex rel. Baker v. Spink,* 126 F.3d 895, 900 (7th Cir. 1997). The court may, therefore, dismiss a claim as frivolous where it is based on an indisputably meritless legal theory or where the factual contentions are clearly baseless. *Neitzke*, 490 U.S. at 327. "Malicious," although sometimes treated as a synonym for "frivolous," "is more usefully construed as intended to harass." *Lindell v. McCallum*, 352 F.3d 1107, 1109-10 (7th Cir. 2003) (citations omitted).

To avoid dismissal for failure to state a claim, the complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). It is not necessary for the plaintiff to plead specific facts; his statement need only "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Erickson v. Pardus*, __ U.S. __, 127 S. Ct. 2197, 2200 (2007) (citations omitted). In deciding whether the complaint states a claim, the court must accept as true all of the factual allegations contained in the complaint. *Bell Atlantic Corp. v. Twombly*, __ U.S. __, 127 S. Ct. 1955, 1965 (2007). There is no heightened pleading requirement for *pro se* prisoner civil rights complaints. *Thomson v. Washington*, 362 F.3d 969, 970-71 (7th Cir. 2004). Of course, if a complaint pleads facts that show that a plaintiff does not have a claim, the complaint should be dismissed "without further ado." *Id*. at 970.

To state a claim for relief under 42 U.S.C. § 1983, a plaintiff must allege: 1) that he was deprived of a right secured by the Constitution or laws of the United States; and 2) that the deprivation was visited upon him by a person acting under color of state law. *Gomez v. Toledo*, 446 U.S. 635, 640 (1980). The court is obliged to give the plaintiff's *pro se* allegations, however inartfully pleaded, a liberal construction. *See Erickson*, 127 S. Ct. at 2200 (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

2

### A. Background

The plaintiff was incarcerated at Redgranite Correctional Institution (RGCI) at all times relevant. Defendant Matthew J. Frank is Secretary of the Wisconsin Department of Corrections (DOC). Defendant Dan Westfield is the DOC Security Chief. Defendant Jeffrey Endicott is the warden of RGCI. Defendant Scott Eckstein is the RGCI Security Director. Defendant Sally J. Wess is the Inmate Complaint Examiner at RGCI. Defendant Randy Trinrud is an RGCI lieutenant and the Designated Security Threat Group Coordinator.

The plaintiff states that he is a member of the Nation of Islam. On numerous occasions between February and August, 2007, prison officials seized the plaintiff's religious materials. For example, in February, March, April and May, 2007, the plaintiff's *Final Call* magazines were confiscated. Additionally, several of the plaintiff's religious texts, including *Message to a Blackman in America*, were taken from him.

Each time the plaintiff's religious materials were confiscated, he received a Contraband Property Tag or Notice of Non-Delivery of Mail/Publication form setting forth the reasons for the seizure. Defendants Trinrud, Eckstein and Endicott, who together comprise the Publication Review Committee, signed many of the forms denying the plaintiff's his religious materials.

As a result of the defendants' actions, the plaintiff was prevented from practicing his religion. Moreover, the plaintiff suffered stress and debilitating headaches.

The plaintiff filed numerous administrative grievances complaining about the denial of his religious materials, which were denied for various reasons. For example, defendant Sally J. Wess told the plaintiff that his *Final Call* magazines were denied

because they contained a re-occurring article that prison officials deemed injurious. For this reason, prison officials banned the magazines throughout the DOC.

On April 6, 1007, the plaintiff wrote to defendant Westfield to ask about the DOC ban on *Final Call* magazines. The plaintiff received a response from defendant Endicott on April 12, 2007, which advised him to address any future concerns to Endicott and not defendant Westfield. However, defendant Endicott did not respond to the plaintiff's inquiry about the ban on *Final Call* magazines.

Thereafter, the plaintiff wrote to defendant Eckstein directly to ask why *Final Call* had been banned. According to the plaintiff, defendant Eckstein's answer was evasive and simply affirmed the denial of the plaintiff's request for delivery of his magazines.

Subsequently, on May 21, 2007, defendant Trinrud returned most of the plaintiff's books, including *Message to a Blackman in America.* The plaintiff was confused when this text was returned because it contains the same article that caused the *Final Call* publication to be considered contraband.

The plaintiff attempted to contact defendant Frank to inform him about the problems he was having at RGCI. Specifically, the plaintiff complained that the prison officials' actions were racially motivated and he asked defendant Frank to respond to his request in writing. The plaintiff contends that he never received a response.

On or around July 15, 2007, the plaintiff wrote to inmate Dion Lacy at Waupun Correctional Institution (WCI) to inquire whether Lacy was permitted to receive *Final Call* magazines. Lacy responded that his subscription to the magazine had not been interrupted.

In sum, the plaintiff argues that

> [t]he denial of my religious newspapers was wrong, and in-effect denied me Freedom of my religion. The confiscation of my books and my newspapers from my cell was wrong and without regard for the significance of the books that were confiscated. The two aforementioned actions in particular caused me great torment, mental anguish and anxiety, and to be singled out for special treatment.

(Complaint at 15).

The plaintiff alleges that the defendants violated his rights under the First, Fifth and Fourteenth Amendments as well as the Religious Land Use and Institutionalized Persons Act (RLUIPA). For relief, he seeks declaratory judgment and monetary damages.

**B.       Analysis**

    **1.       First Amendment**

The plaintiff alleges that the defendants' actions prevented him from practicing his religion. A prisoner is entitled to practice his religion as long as doing so does not unduly burden the institution. *Richards v. White*, 957 F.2d 471, 474 (7th Cir. 1992). A prison regulation that infringes upon an inmate's First Amendment rights is valid only "'if it is reasonably related to legitimate penological interests.'" *Alston v. DeBruyn*, 13 F.3d 1038, 1039 (7th Cir. 1994) (quoting *Turner v. Safley*, 482 U.S. 78, 89 (1987)). The Court of Appeals for the Seventh Circuit has identified several factors which can be used in applying the "reasonableness" standard:

    a.    "whether a valid, rational connection exits between the regulation and a legitimate government interest behind the rule";

    b.    "whether there are alternative means of exercising the right in question that remain available to prisoners";

    c.    "the impact accommodation of the asserted constitutional right would have on guards and other inmates and on the allocation of prison resources; and

> d. "although the regulation need not satisfy a least restrictive alternative test, the existence of obvious, easy alternatives may be evidence that the regulation is not reasonable."

*Al-Alamin v. Gramley*, 926 F.2d 680, 685 (7th Cir. 1991) (quoting *Williams v. Lane*, 851 F.2d 867, 877 [7th Cir. 1988]) (additional quotation marks omitted). Since *Turner*, this circuit has repeatedly reaffirmed the right of prisoners "to practice their religion to the extent that such practice is compatible with the legitimate penological demands of the state." *Id.* at 686 (citing cases). Thus, the plaintiff has state a First Amendment claim.

### 2. Fourteenth Amendment

The plaintiff alleges that the defendants discriminated against him on the basis of his religion. To comply with equal protection, governmental entities are generally required to treat all similarly-situated persons in a similar manner. *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). Unequal treatment among inmates, however, is justified it if bears a rational relation to legitimate penal interest. *Hudson v. Palmer*, 468 U.S. 517, 522-23 (1984). At this stage of the proceedings, the reasons underlying the defendants' actions are unclear. Therefore, the plaintiff has stated an equal protection claim.

Next, the plaintiff asserts that the defendants violated his due process rights when they seized and held his religious materials. The Due Process Clause of the Fourteenth Amendment "provides that certain substantive rights – life, liberty, and property – cannot be deprived except pursuant to constitutionally adequate procedures." *Germano v. Winnebago County*, 403 F.3d 926, 928 (7th Cir. 2005) (quoting *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 541 (1985). Thus, when property is taken by government

action, due process generally requires that the government provide an "opportunity to present reasons, either in person or in writing, why proposed action should not be taken . . . [.]" *Id.* (quoting *Cleveland*, 470 U.S. at 546).

However, a deprivation of a constitutionally protected property interest caused by a state employee's random, unauthorized conduct does not give rise to a § 1983 procedural due process claim, unless the state fails to provide an adequate post-deprivation remedy. *Hudson v. Palmer*, 468 U.S. 517, 533 (1984). Wisconsin law provides tort remedies to individuals whose property has been converted or damaged by another. *See* Wis. Stat. §§ 893.34 and 893.51. If a deprivation of property did not occur as the result of some established state procedure (which the plaintiff does not allege) and state law provides an adequate post-deprivation remedy for redressing the missing property, due process has been satisfied. *Parratt*, 451 U.S. at 543-44; *see also Hamlin v. Vaudenberg*, 95 F.3d 580, 585 (7th Cir. 1996) (holding that Wisconsin's post-deprivation procedures are adequate, albeit in a different context). Therefore, the plaintiff has failed to state a due process claim.

### 3. Religious Land Use and Institutionalized Persons Act

The plaintiff avers that the defendants violated the Religious Land Use and Institutionalized Persons Act, 42 U.S.C. § § 2000cc, et seq. (RLUIPA). "RLUIPA forbids (so far as bears on this case) prisons that receive federal funding to burden a prisoner's exercise of religion substantially unless the prison both has a compelling interest and employs the least restrictive means possible for protecting that interest." *Lindell v. McCallum*, 352 F.3d 1107, 1109-10 (7th Cir. 2003). The Wisconsin prison system receives federal funding. *Id.* at 1110 (citing *Charles v. Verhagen*, 348 F.3d 601, 606 (7th Cir.
7

2003)). "[T]o state a claim under RLUIPA a Wisconsin prisoner need allege only that the prison has substantially burdened a religious belief[.]" *Lindell*, 352 F.3d at 1110. Thus, the plaintiff has stated a claim under RLUIPA.

### 4. Fifth Amendment

The plaintiff alleges that the defendants violated his rights under the Fifth Amendment. It appears that the basis for the plaintiff's potential claim is his allegation that the defendants seized his personal property. Inasmuch as the Fifth Amendment is the federal action counterpart to the Fourteenth Amendment, the court construes this as an assertion that he was denied due process. *See Paul v. Davis*, 424 U.S. 693, 702 n.3 (1976). As discussed above, the plaintiff has failed to make out a due process claim. Moreover, the court must analyze the plaintiff's allegations under the most "explicit source[s] of constitutional protection," *Graham v. Connor*, 490 U.S. 386, 395 (1989); *Conyers v. Abitz*, 416 F.3d 580, 586 (7th Cir. 2005), and in this case, the salient claims are those arising under the First Amendment, the Fourteenth Amendment Equal Protection Clause and RLUIPA. Therefore, the plaintiff may not proceed on a claim predicated on the Fifth Amendment.

In sum, the plaintiff has stated First Amendment, equal protection and RLUIPA claims. However, the plaintiff may not proceed with on a due process or Fifth Amendment claim. Therefore,

**IT IS ORDERED** that the plaintiff's motion to proceed *in forma pauperis* (Docket # 3) is **GRANTED.**

8

Case 2:07-cv-00964-CNC   Filed 12/18/07   Page 8 of 10   Document 5

**IT IS FURTHER ORDERED** that the United States Marshal shall serve a copy of the complaint, the summons, and this order upon the defendant pursuant to Federal Rule of Civil Procedure 4. The plaintiff is advised that Congress requires the U.S. Marshals Service to charge for making or attempting such service. 28 U.S.C. § 1921(a). The current fee for waiver-of-service packages is $8.00 per item mailed. The full fee schedule is provided at 28 C.F.R. §§ 0.114(a)(2), (a)(3). Although Congress requires the court to order service by the U.S. Marshals Service precisely because in forma pauperis plaintiffs are indigent, it has not made any provision for these fees to be waived either by the court or by the U.S. Marshals Service.

**IT IS ALSO ORDERED** that the defendants shall file a responsive pleading to the complaint.

**IT IS FURTHER ORDERED** that the Secretary of the Wisconsin Department of Corrections or his designee shall collect from the plaintiff's prison trust account the $330.44 balance of the filing fee by collecting monthly payments from the account in an amount equal to 20% of the preceding month's income credited to the trust account and forwarding payments to the clerk of the court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. § 1915(b)(2). The payments shall be clearly identified by the case name and number assigned to this action.

**IT IS ALSO ORDERED** that copies of this order be sent to the warden of the institution where the inmate is confined and to Corey F. Finkelmeyer, Assistant Attorney General, Wisconsin Department of Justice, P.O. Box 7857, Madison, Wisconsin, 53707-7857.

9

The plaintiff is hereby notified that he is required to send a copy of every paper or document filed with the court to the opposing parties or their attorney(s). Fed. R. Civ. P. 5(a). The plaintiff should also retain a personal copy of each document. If the plaintiff does not have access to a photocopy machine, he may send out identical handwritten or typed copies of any documents. The court may disregard any papers or documents which do not indicate that a copy has been sent to each defendant or to their attorney(s).

The plaintiff is further advised that failure to make a timely submission may result in the dismissal of this action for failure to prosecute.

In addition, the parties must notify the Clerk's Office of any change of address. Failure to do so could result in orders or other information not being timely delivered, thus affecting the legal rights of the parties.

Dated at Milwaukee, Wisconsin, this 18th day of December, 2007.

BY THE COURT

s/ C. N. CLEVERT, JR.
C. N. CLEVERT, JR.
U. S. DISTRICT JUDGE